# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**FILED**
**SCRANTON**

SEP 2 4 2024

PER_____DJ_____
DEPUTY CLERK

PENNSYLVANIA HEAVY & HIGHWAY CONTRACTORS PENSION FUND, and MICHAEL SAPORITO, TRUSTEE,

           **Plaintiffs**

      **v.**

VALLEY SEEDING, INC.,

          **Defendant**

: 
: 
: 
: 
: 
: **CIVIL ACTION NO. 3:23-cv-1623**
: 
: **(JUDGE MANNION)**
: 
: 
: 
: 

## MEMORANDUM

Presently before the court is Plaintiffs' motion for default judgment. (Doc. 10). On September 29, 2023, Plaintiffs initiated this action against Defendant to collect unpaid, withdrawal liability payments pursuant to Section 4219(c)(5)(A) of the Employee Retirement Income Security Act of 1974 ("ERISA") plus accrued pre- and post-judgment interest, liquidated damages of twenty percent (20%) on the unpaid principal amount due and owing, attorneys' fees and costs of litigation. (Doc. 1, ¶¶26-30, 33-37; Doc. 10). A summons was issued to Defendant on September 29, 2023. (Doc. 2). On October 18, 2023, a return receipt indicating service upon Defendant on October 16, 2023, was filed with the court. (*See* Docs. 3 and 4). Defendant

did not file an answer or otherwise timely respond to the complaint, and the clerk of court entered default against Defendant for failure to answer or otherwise defend the instant suit on November 20, 2023. (Doc. 6). On December 13, 2023, Plaintiffs filed their first motion for entry of default judgment against Defendant. (Doc. 7). By letter request, such motion was withdrawn shortly thereafter on December 29, 2023. (Docs. 8 and 9). Plaintiffs have now renewed their motion for default judgment. The motion was decided without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.

The court has considered the submissions and, for the reasons set forth below, will grant Plaintiffs' motion and award all relief requested, with a modification to attorneys' fees.

## I.   Background[1]

Plaintiffs brought this action to recover withdrawal liability due to Pennsylvania Heavy & Highway Contractors Pension Fund (the "Pension Fund") from the Defendant, pursuant to Section 4219(c)(5)(A) of ERISA, 29

---

[1] The facts and procedural history are drawn from the complaint (Doc. 1), Plaintiffs' motion for summary judgment (Doc. 10), and the Plaintiffs' submissions regarding material facts (exhibits to the complaint (Docs. 1-2, 1-3 and 1-4) and exhibits to the motion for default judgment (Docs. 10-1, 10-2, 10-3, 10-4 and 10-5). *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

U.S.C. §1399(c)(5)(A) and 29 C.F.R. §4219.33; plus accrued pre-judgment interest pursuant to Sections 4301(b), 515, and 502(g) of ERISA, 29 U.S.C. §§1451(b), 1145 and 1132(g); liquidated damages of twenty percent (20%) on the unpaid principal amount due and owing pursuant to Section 502(g)(2)(C) of ERISA, 29 U.S.C. §1132(g)(2)(C); and costs of litigation and attorneys' fees pursuant to Section 502(g)(2)(D) of ERISA, 29 U.S.C. §1132 (g)(2)(D). (Doc. 1, ¶¶26-30, 33-37). The Pension Fund is a retirement trust and plan established pursuant to Section 302(c)(5)(C) of the Labor Management Relations Act, 29 U.S.C. §186(c)(5)(C), and ERISA, which is maintained by its Board of Trustees to provide retirement benefits for its eligible participants and beneficiaries, which collects and receives contributions made on behalf of those participants, which supports their retirement benefits from various employers having collective bargaining agreements with Pennsylvania Heavy & Highway, and to provide pension benefits for eligible participants and beneficiaries. (*Id.* ¶2). The situs of the Pension Fund is Harrisburg, PA, within the Middle District of Pennsylvania. (*Id.*). Plaintiff Michael Saporito is a Trustee of the Pension Fund, and therefore a fiduciary of the Pension Fund within the meaning of Section 3(21) of ERISA, 29 U.S.C. §1002(21). (*Id.* ¶5).

- 3 -

Defendant Valley Seeding, Inc. is an employer in an industry affecting commerce within the meaning Sections 3(5), (11) and (12) of ERISA, 29 U.S.C. §§1002(5), (11) and (12). (Doc. 1, ¶8).[2] Defendant was party, and therefore bound, to a collective bargaining agreement ("CBA") with the United Steelworkers Union (the "Union") that obligated Defendant to make monthly contributions to the Pension Fund on behalf of its employees represented by the Union and covered by the CBA. (*Id.* ¶12). In 2019, Defendant effected a complete withdrawal from the Pension Fund by permanently ceasing to have an obligation to contribute under the plan. (*Id.* ¶13). The Pension Fund calculated Defendant's withdrawal liability to amount to $376,099.00. (*Id.* ¶14).

On October 24, 2022, the Pension Fund sent a letter to Defendant advising, among other things, that the Pension Fund had calculated Defendant's withdrawal liability, in the single sum amount of $376,099.00 and prepared a payment schedule for fifty-three (53) quarterly installments of $10,436.75, plus a final payment of $6,673, to begin within sixty (60) days

---

[2] The court notes that the Plaintiffs' complaint and brief are lacking any further enlightening description of Defendant's industry. Nevertheless, for the purposes of this ruling, the court is satisfied with the pleaded factual allegations and will accept them as true. *See Coastal Mart, Inc. v. Johnson Auto Repair, Inc.*, 2001 WL 253873, at *2 (E.D. Pa. Mar. 14, 2001). Such an oversight, however, calls into question the 22.2 billable hours allegedly required to file and draft the complaint.

of mailing said demand letter. (Doc. 1, ¶¶14-15). The letter also advised Defendant of its right, within ninety (90) days from receipt of such letter, to demand relevant information from the Pension Fund to verify, request, review and/or contest Defendant's withdrawal liability, but that notwithstanding such request, quarterly payments must still be made to the Pension Fund. (*Id.* ¶16; Doc. 1-3).[3] Defendant never contested any of the Pension Fund's respective determinations of its withdrawal liability, nor did Defendant ever initiate arbitration of the amount of withdrawal liability assessed against it within the ERISA timeframe. (Doc. 1, ¶16). Defendant subsequently failed to make any of the quarterly installment payments – or any payment at all – placing it in default and allowing the Pension Fund to accelerate total payment of withdrawal liability. (*Id.* ¶¶18-23). The Pension Fund and its trustee thereafter commenced this action.

---

[3] The court notes that a discrepancy was found between the complaint (Doc. 1, ¶16) and the letter of October 24, 2022 (Doc. 1-3, Exhibit B to the Complaint) regarding the allocated time provided to Defendant to exercise its right to review the withdrawal liability assessment. The court elected to use the 90-day period in the factual background section of this memorandum given that such is the statutory period. However, again, such an oversight calls into question the 22.2 billable hours allegedly required to file and draft the complaint.

## II.    Legal Standard

Rule 55 of the Federal Rules of Civil Procedure allows a court to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. Fed. R. Civ. P. 55(b)(2); *see Broad. Music, Inc. v. Kujo Long, LLC*, No. 1:14-CV-00449, 2014 WL 4059711, at *1 (M.D. Pa. Aug. 14, 2014) (entry of default judgment is typically appropriate for a defendant failing to appear at least until the defendant comes forward with a motion to set aside the default judgment pursuant to Rule 55(c)) (citing *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 177 n. 9 (3d Cir. 1990)). "A consequence of the entry of a default judgment is that the factual allegations of the complaint . . . will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (internal quotation marks and citations omitted). Whether to grant default judgment is left "primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citation omitted).

Prior to entering default judgment, the court must determine whether it has subject matter jurisdiction over the claims asserted and personal jurisdiction over the parties. *Mark IV Transp. & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103. 108 (3d Cir. 2017) (citation omitted). "A court obtains personal jurisdiction over the parties when the complaint and

summons are properly served upon the defendant. Effective service of process is therefore a prerequisite to proceeding further in a case." *Lamps v. Xouth, Inc.*, 952 F.2d 697, 700–01 (3d Cir. 1991)). Federal Rule of Civil Procedure 4(h)(1)(B) provides that a corporation must be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Further, the Court must determine whether the moving party's complaint establishes a legitimate cause of action. *Trustees of Laborers Loc. No. 1174 Pension Fund v. DB Util. Contractors, LLC*, No. 1:22-CV-01160, 2023 WL 3743573, at *2 (M.D. Pa. May 31, 2023).

If these initial requirements are met, then the Court must consider three factors to determine whether entry of a default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

### III. Discussion

### A. Jurisdiction

As a threshold matter, the court must determine whether it has subject matter jurisdiction over the claims asserted and personal jurisdiction over the parties. *See Mark IV Transp. & Logistics, 705 Fed. App'x at 108* (citation omitted). A federal court has subject matter jurisdiction over disputes arising under federal law and those between parties of diverse citizenship. 28 U.S.C. §§1331, 1332.

For a district court to have federal question jurisdiction over a dispute, the dispute must "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. §1331. Here, the matter arises under 29 U.S.C. §§1381–82, and 1451.[4] The Court, accordingly, has subject matter jurisdiction over this matter.

As to personal jurisdiction, "[a] court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant." *Lamps*, 952 F.2d at 700–01. Plaintiffs filed an affidavit of service

---

[4] "The district courts of the United States shall have exclusive jurisdiction of an action under this section without regard to the amount in controversy, except that State courts of competent jurisdiction shall have concurrent jurisdiction over an action brought by a plan fiduciary to collect withdrawal liability." 29 U.S.C. §1451.

for the complaint and summons. (Docs. 3 and 4). The Court, therefore, has personal jurisdiction over the Defendant.

## B. Legitimate Cause of Action

Plaintiffs allege that Defendant violated §515 of ERISA, 29 U.S.C. §1145, by failing to make contributions to the Pension Fund plan, as required under the CBA, and bring this action under §4301(b) of ERISA, 29 U.S.C. §1451(b) to compel Defendant to pay its unpaid withdrawal liability and other damages. (Docs. 1, 10, 11). Section 515 of ERISA "requires an employer to contribute to a multiemployer benefit plan in accordance with the 'terms and conditions' set forth in the collective bargaining agreement." *Cent. Pa. Teamsters Pension Fund v. McCormick Dray Line, Inc.*, 85 F.3d 1098, 1111 (3d Cir. 1996) (dissent) (citing 29 U.S.C. §1145). In the complaint, Plaintiffs allege that the Defendant was delinquent with its contributions to the plan, failed to cure this delinquency, and failed to remit payment for its unpaid withdrawal liability. (Doc. 1, ¶¶18-23). Taking the allegations of the complaint as true, Plaintiffs have established a legitimate cause of action under §515 of ERISA.

## C. *Chamberlain* Factors

Because Plaintiffs have established a legitimate cause of action, the Court must next consider the three *Chamberlain* factors to determine

whether entry of a default of a judgment is appropriate, specifically: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain*, 210 F.3d at 164 (citing *$55,518.05 in U.S. Currency*, 728 F.2d at 195).[5] The court addresses each factor in turn.

As to the first factor, "Plaintiffs will be prejudiced if the court declines to enter default judgment, as they are unable to proceed with the action due to the Defendant's failure to respond and have no other means of recovering against Defendant." *Trustees of Laborers Loc. No. 1174 Pension Fund v. DB Util. Contractors, LLC*, No. 1:22-CV-01160, 2023 WL 3743573, at *2 (M.D. Pa. May 31, 2023) (citing *Broad. Music, Inc. v. Kujo Long, LLC*, No. 14-cv-00449, 2014 WL 4059711, at *2 (M.D. Pa. Aug. 14, 2014) (finding that the "[p]laintiffs will be prejudiced . . . by their current inability to proceed with their action due to Defendants' failure to defend")). Here, the Defendant has failed

---

[5] A court may "enter a default judgment based solely on the fact that the default occurred" without considering the *Chamberlain* factors if the defendant has been properly served but fails to appear, plead, or defend an action. *Trustees of Laborers Loc. No. 1174 Pension Fund*, 2023 WL 3743573, at *2 (citing *Anchorage Assocs.*, 922 F.2d at 177 n.9 (3d Cir. 1990)). Nevertheless, this court will consider the *Chamberlain* factors in its ruling.

to participate; therefore, the court finds that this factor weighs in favor of granting default judgment.

As to the second factor, "a . . . defense[ ] will be deemed meritorious when the allegations of the pleadings, if established at trial, would . . . constitute a complete defense." *Poulis v. State Farm Fire and Cos, Co.*, 747 F.2d 863, 869-70 (3d Cir. 1984) (citing *$55,518.05 in U.S. Currency*, 728 F.2d at 195). Here, the Defendant has not asserted any meritorious defenses to Plaintiffs' claims through the filing of an answer or other responsive pleading to the complaint, or through the filing of a response to the present motion. Accordingly, the court is unable to conclude from the Defendant's silence that it has a viable, litigable defense and finds that this factor also weighs in favor of granting default judgment.

As to the final factor, the court considers "whether Defendant['s] delay is due to culpable conduct." *Chamberlain*, 210 F.3d at 164. "[C]ulpable conduct means actions taken willfully or in bad faith." *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123-24 (3d Cir. 1983). A failure to respond "at the very least . . . reflects willful conduct." *United States v. DiPiazza*, No. 16-518, 2016 WL 7015625, at *2 (D.N.J. Nov. 30, 2016); *see also Innovative Office Prods., Inc. v. Amazon.com, Inc.*, No. 10-cv-04487, 2012 WL 1466512, at *3 (E.D. Pa. Apr. 26, 2012) (explaining that "[a]

defendant's default, or its decision not to defend against allegations in a complaint, may be grounds for concluding that the defendant's actions are willful"). Here, the Defendant was properly served and failed to respond. The court "cannot discern from the record any excuse or justification for the Defendant's default apart from its culpability." *Trustees of Laborers Loc. No. 1174 Pension Fund*, 2023 WL 3743573, at \*2. Therefore, given the Defendant's willful conduct, the court finds that the third factor weighs in favor of granting default judgment.

### D. Damages

Having found that Plaintiffs established a legitimate cause of action for a violation of ERISA, and having found the *Chamberlain* factors weigh in favor of granting default judgment, the Court turns to the issue of damages.

After finding a party is entitled to default judgment, the well-pleaded, factual allegations of the complaint, except those relating to the damage amount, are accepted as true and treated as though they were established by proof. *See Coastal Mart, Inc. v. Johnson Auto Repair, Inc.*, 2001 WL 253873, at \*2 (E.D. Pa. Mar. 14, 2001); *see also U.S. ex rel. Motley v. Rundle*, 340 F.Supp. 807, 809 (E.D. Pa. 1972) (citing *Thomson v. Wooster*, 114 U.S. 104, 114 (1884)). A party's default does not suggest that the party has admitted the amount of damages that the moving party seeks. *See*

*Comdyne I, Inc.*, 908 F.2d at 1149 (3d Cir. 1990). A court may conduct a hearing to determine the proper amount of damages, Fed. R. Civ. P. 55(b)(2), but no hearing is needed where the damages can be determined from the evidence submitted, and "a reasonable calculation of damages should be made by looking at the evidence and the affidavits submitted by the moving party." *E. Elec. Corp. of New Jersey v. Shoemaker Const. Co.*, 652 F. Supp. 2d 599, 605 (E.D. Pa. Sept. 3, 2009) (citing *J & J Sports Prods. V. Roach*, 2008 U.S. Dist. LEXIS 109055 (E.D. Pa. July 8, 2008)).  "It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." *Pope v. United States*, 323 U.S. 1,12 (1944).

Under ERISA, a civil action "to compel an employer to pay [unpaid] withdrawal liability" is treated the same as an action to collect delinquent contributions under §1145. *See* 29 U.S.C. §1451(b); *see also United Retail & Wholesale Emps. Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc.*, 787 F.2d 128, 134 (3d Cir. 1986), aff'd, 481 U.S. 735, (1987). As noted above, Plaintiffs' action to recover withdrawal liability here is treated as an action brought under Section 1145. Section 1132(g) provides that in any action brought by a pension plan to enforce Section 1145 in which

a judgment is awarded in favor of the plan, the court must award interest on the unpaid contributions, reasonable attorneys' fees and costs, and the greater of either 20% of the unpaid contributions or an amount equal to the accrued interest. 29 U.S.C. §1132(g). Such an award is mandatory. *See Yahn*, 787 F.2d at 134 ("§1132 made attorney's fees, costs and liquidated damages mandatory upon a judgment in favor of a pension plan"). "The unpaid contributions, interest, and liquidated damages generally are considered 'sums certain' pursuant to the calculations mandated in ERISA and the parties' agreements." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 31 (D.D.C. 2002) (citation omitted). However, the reasonableness of the requested attorney's fees is a "judgment call" which only the court can make. *Id.*

The court addresses each category of damages in turn.

## 1. Unpaid Withdrawal Liability

Plaintiffs argue that the Defendant waived its defenses to the Pension Fund's assessment of withdrawal liability when the Defendant failed to initiate arbitration, failed to contest the assessment, failed to pay any liability in accordance with the payment schedule, failed to cure the delinquency, and failed to even respond to any of the notices. (Doc. 11, pp. 2-4). The

Defendant has not presented any counterarguments or response to Plaintiffs' contentions.

Under ERISA, an employer may contribute to a pension plan on behalf of its employees who belong to a participating union. Congress found, however, that ERISA did not adequately protect pension plans from the adverse consequences that resulted when employers withdrew from the plans. *Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia*, 830 F.2d 1241, 1243 (3d Cir. 1987) (quoting *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 722 (1984)). Congress, therefore, enacted the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") in order to protect the solvency of multiemployer pension plans. *See IUE AFL–CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118, 127 (3d Cir. 1986) ("The MPPAA was designed '(1) to protect the interests of participants and beneficiaries in financially distressed multiemployer plans, and (2) . . . to ensure benefit security to plan participants.'") (quoting H.R. Rep. No. 869, 96th Cong., 2d Sess. 71, reprinted in 1980 U.S. Code Cong. & Admin. News 2918, 2939). Pursuant to the MPPAA, when a contributing employer to a multiemployer pension plan withdraws from participation in the plan, the plan's trustees may collect withdrawal liability from the employer. 29 U.S.C. §§1381(b), 1391(a). "An employer may discharge that obligation by making

a series of periodic payments according to a postwithdrawal schedule set by the pension fund's trustees, or it may prepay the entire debt at any time." *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of California*, 522 U.S. 192, 195 (1997).

In other words, the procedure imposed by the MPAA is as follows. Once an employer withdraws from a pension plan, the plan's trustees must make a determination of the amount of the withdrawal liability owed. 29 U.S.C. §§1381, 1382(1). The trustees must then notify the employer of the amount of the liability assessed and demand payment. 29 U.S.C. §§1382(2), 1399(b)(1). The employer then has 90 days from receipt of the notice to request a review of the liability determination by the trustees of the plan. 29 U.S.C. §1399(b)(2)(A)(i). If the dispute over the existence or amount of the liability is not resolved, either party may institute arbitration proceedings. 29 U.S.C. §1401(a)(1). If the employer fails to initiate arbitration proceedings, the withdrawal liability assessment becomes due and owing and the trustees may commence an action to collect the unpaid withdrawal liability from the employer. 29 U.S.C. §§1401(b)(1), 1451.

Here, the Plaintiffs seek an award of unpaid withdrawal liability in the principal amount of $376,099.00. (Doc. 1, ¶ 36; Doc. 10). The court finds that Plaintiffs are entitled to that award given its compliance with the requirements

of §1382. In essence, the Defendant became subject to the strictures of the MPAA when it agreed to the CBA with the Union—thus, becoming bound to make monthly contributions to the Pension Fund on behalf of its employees represented by the Union and covered by the CBA. When the Defendant ceased to fulfill its obligation, the Plaintiffs informed the Defendant of its withdrawal liability assessment, provided the Defendant a payment schedule to make installment payments on such assessment, and notified the Defendant of its right to review and/or contest such an assessment. Failing to exercise that right, the Defendant may not subsequently contest that assessment. Furthermore, failing to make any of the quarterly installment payments – or any payment at all for that matter – placed the Defendant in default and allowed Plaintiffs to accelerate the total payment of the withdrawal liability making it immediately due and owing.

Accordingly, having found Plaintiffs established a legitimate cause of action for a violation of ERISA, and having found the *Chamberlain* factors weigh in favor of granting Plaintiffs default judgment, the court awards Plaintiffs' damages for unpaid withdrawal liability in the amount of $376,099.00.

## 2. Interest and Liquidated Damages

Plaintiffs seek an award of pre-judgment interest in the amount of $18,299.74, liquidated damages in the amount of $11,282.97 and post-judgment interest to run at the rate prescribed under 29 CFR §4219.32(b) from the date of the instant motion until paid. (Doc. 10, p. 1).

ERISA mandates the award of "interest on the unpaid contributions" when judgment is entered in favor of a plan. *See* 29 U.S.C. §1132(g)(2)(B). "In the event of a default, a plan [fiduciary] may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. §1399(c)(5). "[I]nterest on unpaid contributions shall be determined by using the rate provided under the [P]lan...." 29 U.S.C. §1132(g)(2)(E). In addition to an award of unpaid withdrawal liability and interest on that liability, ERISA mandates an additional award of "an amount equal to the greater of [ ] [1] interest on the unpaid contributions [ ] or [2] liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount [of unpaid contributions]." 29 U.S.C. §1132(g)(C).

Section 502 also requires a court to award any plaintiff who receives a favorable judgment in an action to enforce Section 515 "unpaid contributions,

interest on those unpaid contributions, liquidated damages [at a rate not to exceed twenty percent], and reasonable attorneys' fees and costs." *Trustees of Laborers Loc. No. 1174 Pension Fund*, 2023 WL 3743573, at \*3 (citing 29 U.S.C. §1132(g)(2)). As explained above, unpaid contributions, interest, and liquidated damages generally are considered "sums certain" pursuant to the calculations mandated in ERISA and the parties' contractual agreements. *See Int. Painters and Allied Trades Industry Pension Fund v. R.W. Amrine Drywall Company, Inc., et al.*, 239 F.Supp.2d 26, 31 (D.D.C. 2002).

Here, Plaintiffs have argued that 29 C.F.R. §4219.32 should guide this court in assessing the interest on unpaid principal withdrawal liability both for pre- and post-judgment, and has accordingly furnished this court with a table summary of such calculations. (Doc. 11, p. 4; Doc. 10-3, p. 2).[6] To comply with the regulatory requirements, Plaintiffs have varied the interest rates based on the applied time periods for a total due prejudgment interest amount of $18,299.74. Similarly, the court have provided a similar calculation of the liquidated damages for a total amount of $11,282.97. *See Trustees of Nat'l Elec. Benefit Fund v. Mirarchi Bros., Inc.*, No. 21-cv-04399, 2022 WL 221610, at \*4 (E.D. Pa. Jan. 24, 2022) (concluding that the plaintiffs had

---

[6] The court notes for the benefit of Plaintiffs' counsel that 29 C.F.R. §4219.32 is a regulation and not a statute.

stated a claim under ERISA because the "[c]omplaint sufficiently allege[d] that [the] [d]efendants were delinquent on their contributions and that, pursuant to the CBAs, Trust Agreements, and ERISA §502(g), the [t]rustees are entitled to recover the delinquent contributions, interest, and liquidated damages").

Furthermore, the court also finds that the final aggregate "judgment will accrue interest from the date of the entry of judgment until it is repaid in full at the current legal rate under 28 U.S.C.§1961, which 'statutorily mandate[s]' interest on all post-judgment debt." *Trustees of Laborers Loc. No. 1174 Pension Fund*, 2023 WL 3743573, at *3 (citing *Dunn v. HOVIC*, 13 F.3d 58, 62 (3d Cir. 1993) (explaining that that "post-judgment interest is awarded by statute as a matter of law so it is automatically added, whether or not the district court orders it").

Accordingly, the court is satisfied with this sum certain and awards Plaintiffs prejudgment interest damages in the amount of $18,299.74 and $11,282.97 in liquidated damages. The court will also award post-judgment interest on the unpaid withdrawal liability at the rate prescribed under 29 CFR §4219.32(b) and on the aggregate sum from the date of the entry of judgment until it is repaid in full at the current legal rate under 28 U.S.C. §1961.

### 3. Reasonable Attorneys' Fees and Costs

Plaintiffs seek an award for attorneys' fees and costs in the amount of $10,474.00. (Doc. 10, p. 1). ERISA mandates an award of reasonable attorneys' fees and costs. 29 U.S.C. §1132(g)(2)(D); *see also Laborers Loc. Union 158 v. On-Call Flagging, Inc.*, No. 1:16-CV-00843, 2017 WL 1344667, at *4 (M.D. Pa. Apr. 12, 2017) ("29 U.S.C. §1132(g)(2) instructs that the Court must award the [pension fund] reasonable attorney's fees and costs of the action, to be paid by the defendant"). A district court uses the "lodestar" formula to determine a reasonable attorneys' fee award. *See City of Burlington v. Dague, 505 U.S. 557, 562 (1992)*. The party seeking attorneys' fees must produce evidence that the hours spent and rate charged are reasonable. *See Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

In *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, the Third Circuit Court of Appeals explained how courts apply the lodestar formula:

> Under the lodestar method, "[t]he party seeking attorney's fees has the burden to prove that its request . . . is reasonable." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). "When the applicant for a fee has carried [its] burden of showing that the claimed rates and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (quoting *Pennsylvania v. Del. Valley Citizens' Council for*

*Clean Air*, 478 U.S. 546, 564, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)). But courts "have a positive and affirmative function in the fee fixing process, not merely a passive role." *Id.* "In calculating the hours reasonably expended, a court should 'review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are "excessive, redundant, or otherwise unnecessary."'" *Id.* (quoting *Pub. Interest Research Grp. Of N.J. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)).

903 F.3d 396, 400 (3d Cir. 2018). The court will address the reasonable hourly rate and number of hours reasonably expended in turn.

### i.    Reasonable Hourly Rate

"The 'starting point' in determining the appropriate hourly rate is the attorneys' usual billing rate. The Supreme Court has directed that the district court should then consider the 'prevailing market rates' in the relevant community." *Penn. Envtl. Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 231 (3d Cir. 1998) (internal citations omitted). The court should "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (citing

*Student Public Interest Research Group v. AT & T Bell Laboratories*, 842 F.2d 1436, 1447 (3d Cir. 1988)).

Here, Plaintiffs request a rate of $375 per hour for the representation of their attorneys and $200 per hour for the representation of their paralegal. To support this request, Plaintiffs have submitted a copy of invoices for their counsel's work on the instant matter, which included detailed entries for the work undertaken, with a table providing their rates. (*See generally* Doc. 10-4). Furthermore, Plaintiffs' counsel of record has submitted an affidavit certifying that the "[f]ees in this matter have been billed at rates customarily charged in similar matters to clients of [counsel's] firm." (Doc. 10-1, p. 2).

The court finds that the requested hourly rates for Plaintiffs' counsel's representation falls within the range of rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *See, e.g., Carpenters Health & Welfare Fund of Philadelphia & Vicinity v. Reyes*, No. 17-cv-05107, 2018 WL 3437212, at *4 (E.D. Pa. July 16, 2018) (finding reasonable a $340.00 hourly rate for litigating a motion for default judgment motion for default judgment in an ERISA action).[7] The court

---

[7] Case law in this district does not speak enough about paralegal hourly rates, however, the court finds that Plaintiffs' counsel's paralegal rate to be reasonable—despite being on the high side.

will next turn to the number of hours expended on the litigation before making a final determination of attorneys' fees.

### ii.     Reasonable Hours Expended on the Litigation

When awarding fees, a district court must "decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 710 (3d Cir. 2005) (quoting *Pub. Interest Research Grp. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)); *see also Clemens*, 903 F.3d at 400.

A district court has an affirmative role in ensuring that a request for fees is "accompanied by 'fairly definite information as to hours devoted to various general activities.'" *UAW Local 259 Soc. Sec'y Dept. v. Metro Auto Ctr.*, 501 F.3d 283, 291 (3d Cir. 2007) (quoting *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 361 (3d Cir. 2001)). Therefore, "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The Third Circuit has emphasized that a district court must "'go line by line, by line' through the billing records supporting the fee request." *Interfaith*, 426 F.3d at 713 (quoting *Evans*, 273 F.3d at 362).

Upon inspection of the invoices attached to the instant motion (Doc. 10-4, pp. 4-12), the information on the various activities by counsel regarding the drafting and filing of the complaint (including, but not limited to, "[v]ideo conference . . . re complaint," "[i]n office conference . . . re complaint," "[d]raft complaint," "[r]eview and revise draft complaint," and "[r]eview exhibits to draft complaint") did not adequately support the time expended on such complaint nor the reasonableness of the requested attorney fees. Plaintiffs' counsel spent a total of 22.2 billable hours drafting, reviewing and discussing a complaint of merely 9 pages in length,[8] double-spaced, with generous margin lines and relatively standard language found in complaints seeking similar relief. Now, the court does note that "[i]t is well-recognized that 'ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation.'" *Stevens v. SEI Invs. Co.*, No. 18-4205, 2020 WL 996418, at *18-4205 (E.D. Pa. Feb. 26, 2020) (citations omitted). Nevertheless, the court finds that 22.2 billable hours required for this complaint to be drafted and discussed is unnecessary and unreasonable. *See Maldonado*, 256 F.3d at 184 ("Hours that would not generally be billed to one's own client are not properly billed to an adversary." (quoting *Pub. Interest Research Grp.*, 51 F.3d at 1188)). Accordingly, the court will allow

---

[8] 8 pages if the caption and signature block were removed.

for the first two invoices ((1) "Invoice No. 104167" for $2,310 (Doc. 10-4, p. 4); and (2) "Invoice No. 104512" for $1,122.50 (Doc. 10-4, p. 7)) and disallow the third invoice ("Invoice No. 105353" for $3,545.00 (Doc. 10-4, p. 10))— nearly halving the total fee and reaching a reasonable fee to draft and file this complaint.

As to the final invoice ("Invoice No. 105620"), the overwhelming majority of the time periods (7.2 of 8.2 billable hours) was expended "re service of process." (Doc. 10-4, pp. 14-15). Specifically, after a short telephone conference,[9] Plaintiffs' counsel expended 2 hours on "10/02/23" to "[r]esearch service of process question," and then, subsequently, expended 4.9 hours to further "[r]esearch," "[c]onfer," "conference," "[e]mail" and "[f]ollow up" on "service of process." (Doc. 10-4, p. 14). The court is straining to understand what type of question regarding service has so confounded counsel that they required 7.2 hours to resolve. The time entries have not provided any explanation or details regarding the issue faced about service of process. Accordingly, the court will allow only the initial conference, research and discussion of service of process on "10/02/203" (i.e., 2.7 attorney billable hours for $1,012.50) of the invoice and disallow all

---

[9] A total 0.3 hours of "[t]elephone conference . . . re service of process." (Doc. 10-4, p. 14).

other billed entries from "10/03/2023" to "10/16/23." (*Id.*).[10] As to the rest of the entries on that invoice from "10/20/23" to "10/27/23" (0.3 billed by "LG [Paralegal]" for "Video conference . . . re default judgment" and 0.7 billed by the attorneys "RP" and "BME" regarding "default judgment," "complaint," "[a]nswer" and "planning for next steps"), the court finds such fees ($322.50) to be reasonable and will allow for them. (*Id.*, pp. 14-15).

### iii.   Final Calculation of Fee Award and Costs

Accordingly, the court will exclude "Invoice No. 105353," (Doc. 10-4, pp. 10-11), and the 4.5 hours expended on "service of process" in "Invoice No. 105620" between "10/03/23" and "10/16/23", (*Id.*, p. 14), from the calculation for attorneys' fees. The litigation costs of $684.00, which included "[c]ourt fees" on "10/01/23" and "[s]ummons and complaints filing," are deemed reasonable and allowed. (Doc. 10-4, p. 15). As a result, Plaintiffs will be awarded a total of $5,451.50 in attorneys' fees and costs.

### IV.   Conclusion

For the foregoing reasons, Plaintiffs' Motion for Default Judgment (Doc. 10) will be granted in part and denied in part. Plaintiffs will be awarded $376,099.00 for unpaid withdrawal liability, $18,299.74 in prejudgment

---

[10] Such amount of time is reasonably sufficient to resolve a question concerning service of process.

interest, $11,282.97 in liquidated damages, $5,451.50 in attorneys' fees and costs, post-judgment interest on the withdrawal liability at the rate prescribed under 29 CFR §4219.32(b), and post-judgment interest on the aggregate sum at the rate prescribed under 28 U.S.C.§1961. Plaintiffs will not be awarded attorneys' fees at the requested $10,474.00. An appropriate order will follow.

s/Malachy E. Mannion
**MALACHY E. MANNION**
**United States District Judge**

**DATE: September 24, 2024**
23-1623-01